IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE HUTCHENS, <br><br> Plaintiff, <br><br> v. <br><br> RUBIYA DEVASIACHEN, DAVID FLORES, AND THE NATIONAL FOUNDATION FOR THE CENTERS FOR DISEASE CONTROL AND PREVENTION, INC. <br><br> Defendants. | Case No. 1:24-cv-00490 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joyce Hutchens sued Rubiya Devasiachen ("Devasiachen"), David Flores ("Flores"), and the National Foundation for the Centers for Disease Control and Prevention, Inc. ("the Foundation," collectively "Defendants"), alleging intentional interference with contractual relations, tortious interference with prospective economic advantage, civil conspiracy, and intentional infliction of emotional distress, and violations of the Age Discrimination in Employment Act ("ADEA"), Civil Rights Act of 1866 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Illinois Whistleblower Act ("IWA"). For the reasons stated herein, Defendants' motion to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [32] is granted in part and denied in part.

I.     Background

1

The following factual allegations taken from Hutchens's Second Amended Complaint [26] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Hutchens is a Black woman, [26] ¶ 30, who was sixty-seven years old during the relevant period, [26-1] at 11.[1] Hutchens's professional career spans five decades, and her work history includes being a teacher and school administrator, corporate administrator, training and consulting professional, entrepreneur, public speaker, nationally recognized author, and communications professional. [26] ¶ 108. Between December 21, 2021 and April 30, 2022, Hutchens applied for nine positions with the Foundation. [26] ¶ 36. Although Hutchens was highly qualified for each of the positions, the Foundation offered Hutchens an entry-level position as a COVID-19 School Liaison ("School Liaison") with the Illinois Workforce Vaccine Project, and offered non-Black, less qualified people the other eight positions that were not entry level. [26] ¶¶ 37, 193-94. The School Liaison position was a temporary, grant-funded position with an end date of July 31, 2022. [26] ¶ 38.

The Foundation partnered with the Illinois Department of Public Health ("IDPH") and SHIELD Illinois ("SHIELD") on the Illinois Workforce Vaccine Project which involved administering SHIELD's innovative saliva-based PCR test, covidSHIELD, to all Illinois public school districts. [26] ¶¶ 34-35. The Chicago Board

---

[1] In her complaint, Hutchens incorporates by reference her Office of Federal Contract Compliance complaint, [26-1] at 1-7, and the charges of discrimination that she filed on August 3, 2022, [26-1] at 10-11, and November 30, 2022, [26-1] at 15-16. "It is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up).

2

of Education was one of the school districts that partnered with SHIELD and the Foundation to provide COVID-19 testing to charter schools under its jurisdiction. [26] ¶ 173. Hutchens accepted the School Liaison position and began working on February 7, 2022. [26] ¶ 37. In a meeting that took place in May 2022, an IDPH employee who served as Program Manager for the Illinois Workforce Vaccine Project informed the team that employees who had work performance issues might not have their employment extended after July 31, 2022. [26] ¶ 56. Hutchens believed the Foundation would extend her employment because her work performance was excellent. [26] ¶ 57. Flores, who served as the Chicago and Los Angeles regional coordinator for the Foundation, told the Illinois Workforce Vaccine Project team that the people based in Chicago had "nothing to worry about" when it came to employment extensions. [26] ¶¶ 33, 58.

On May 27, 2022, Hutchens received an email from Flores informing her that her employment would end at the close of business on July 31, 2022, and that the decision to terminate Hutchens's employment with the Foundation was not based on her performance. [26] ¶ 59. In a conversation with Flores on June 1, 2022, Flores told Hutchens that the Foundation was not extending her employment because of a funding issue. [26] ¶ 63. Hutchens asked Flores why the Foundation was extending her coworkers' employment contracts, including those who had performance, attendance, and tardiness issues, but not extending Hutchens's employment contract despite Hutchens having no work performance issues, stellar attendance and punctuality, the most work experience on her team, the most (or only) school-related

3

work experience, the highest level of education, and the only experience teaching even though teaching was a qualification for the School Liaison position. [26] ¶¶ 64-65. Hutchens alleges that Flores could not provide a direct explanation. [26] ¶ 65. After Hutchens's contract ended, the similarly situated younger, non-Black School Liaisons who remained employed by the Foundation transitioned to become SHIELD employees. ¶1, 168.

On June 3, 2022, Hutchens told Helen Tovar ("Tovar"), the Foundation's General Counsel for Compliance, that she had concerns that the Foundation violated federal and state age discrimination laws by not extending her contract. [26] ¶ 85. Two months later, Tovar reported that the Foundation's investigation revealed that there were a number of reasons why Hutchens's employment was not extended, including that Hutchens was tardy to her assignments and made a request to not be assigned to areas outside a certain radius as a result of transportation issues. [26] ¶¶ 101-02. After receiving her personnel file from the Foundation, Hutchens reviewed the file and did not find any information related to tardiness, transportation radius issues, or work performance issues. [26] ¶ 88. Hutchens alleges that the purported reasons her employment contract was not extended were false, [26] ¶ 127, and that the Foundation did not extend her employment and took other adverse employment actions against her because of her age, [26] ¶¶122, 177-82, and her race, [26] ¶¶ 184-89.

Hutchens also alleges that the Foundation created a document called "Hutchens Joyce Application" and placed it in her personnel file after she was hired

4

and before the Foundation decided not to extend her employment. [26] ¶¶ 154, 171. The document contained a link to the website for Hutchens's nonprofit organization. [26] ¶ 158. Hutchens's website discussed *Hutchens v. Chicago Board of Education et al.*, 1:09-cv-07931(N.D. Ill.), a lawsuit that Hutchens filed that alleged race discrimination and violations of Section 1983 against the Chicago Board of Education. [26] ¶ 158-59. The case ultimately settled. [26] ¶ 159. Hutchens alleges that after the Foundation discovered her involvement in *Hutchens v. Chicago Board of Education*, the Foundation retaliated against her by not extending her employment contract because of the business relationship between the Foundation, SHIELD, and the Chicago Board of Education. [26] ¶¶ 173, 204-07.

On July 7, 2022, Hutchens filed with the Office of Federal Contract Compliance ("OFCCP") charges of age and race discrimination and retaliation against the Foundation. [26] ¶ 5. On August 3, 2022, Hutchens timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). [26] ¶ 11. Hutchens filed another charge of discrimination with the EEOC on November 30, 2022. [26] ¶ 19. On December 14, 2023, the EEOC issued Hutchens notices of her right to sue that were related to her charges. [26] ¶ 24. Hutchens filed this action on July 1, 2024.

Defendants move to dismiss all of Hutchens's claims based on Rule 12(b)(1) and 12(b)(6). [32].

**Standard**

A facial challenge to subject matter jurisdiction under Rule 12(b)(1) contests whether the allegations, taken as true, support standing. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). A court deciding a Rule 12(b)(1) motion takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Id.*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181.

II. Analysis

Defendants advance several arguments for why each count in Hutchens's Second Amended Complaint should be dismissed. The Court will address them in turn.

    **A. Hutchens's ADEA and Section 1981 claims can proceed in the alternative.**

6

Under the Supreme Court's decision in *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, to prevail on a Section 1981 claim a plaintiff must initially plead and ultimately prove that, but for race, she would not have suffered the loss of a legally protected right. 140 S. Ct. 1009, 1019 (2020). To prevail on an age-discrimination claim, a plaintiff must prove that her age was the but-for cause of the challenged job action. *See Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2352 (2009). Defendants argue that Hutchens cannot state a claim under the ADEA or Section 1981 because she alleged discrimination based on both age and race and therefore cannot establish that either was the but-for cause of the alleged adverse employment actions. [33] at 5-6. In support of their argument, Defendants state that Hutchens's Second Amended Complaint "contradicts itself and in two consecutive paragraphs alleges [that] her race was the 'but for' cause of the alleged violation [and] that 'age discrimination and retaliation also were contributing factors.'" [33] at 5-6 (citing [26] ¶¶ 189-190). In response, Hutchens argues that there can be multiple but-for causes of discrimination and parties are permitted to plead in the alternative. [35] at 7-9.

While *Comcast* establishes a but-for causation standard for Section 1981 claims, it does not address whether a plaintiff can plead *multiple* but-for causes. *See Walton v. Medtronic USA, Inc.*, No. 22-CV-50 (PJS/JFD), 2023 WL 3144320, at *4 (D. Minn. Apr. 28, 2023). Lower courts within this Circuit and outside of this Circuit disagree on whether a "but-for" causation standard can be plausibly pled for purposes of Rule 12(b)(6) where a plaintiff has alleged multiple forms of discrimination. *Compare Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2-3

7

(N.D. Ill. Oct. 13, 2022) (dismissing a Section 1981 claim where plaintiff alleged discrimination because of his race, ethnicity, national origin, and citizenship status), and *Adetoro v. King Abdullah Acad.*, 585 F. Supp. 3d 78, 83 (D.D.C. 2020) (dismissing a Section 1981 claim where plaintiff offered a "buffet of reasons" other than race that plausibly caused or contributed to their termination), *with Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) ("[The *Comcast*] causation standard is not necessarily inconsistent with pleading that an adverse employment action had two but-for causes. . . ." (citing *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020))), and *Newman v. Amazon.com, Inc.*, No. 21-CV-531 (DLF), 2022 WL 971297, at *7 (D.D.C. Mar. 31, 2022) ("[Plaintiff] has not failed to plead but-for causation because, elsewhere in her complaint, she alleges that she was discriminated against based on race and sex.").

The court in *Walton v. Medtronic USA, Inc.*, No. 22-CV-50 (PJS/JFD), 2023 WL 3144320 (D. Minn. Apr. 28, 2023) held that "pleading multiple, bundled theories of discrimination does not prevent a plaintiff from pleading that racial discrimination was the but-for cause of their termination as required by 42 U.S.C. § 1981." *Walton*, 2023 WL 3144320, at *8. In support of its finding, the court stated that the language in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) limiting *Bostock*'s holding to Title VII does not preclude courts from adopting *Bostock*'s conclusion that events often have multiple but-for causes. *Id. at *7*. Importantly, the court also stated that even if it had found that plaintiff could not plead multiple, bundled theories of discrimination in support of his Section 1981 claim, it would still grant plaintiff leave to amend his

8

complaint because the Federal Rules of Civil Procedure allow for alternative and inconsistent pleading. *Id.*

Here, Hutchens alleges that the Foundation did not extend her employment because of her age and treated her differently than similarly situated employees because of her age. [26] ¶¶ 122, 177-82. Hutchens also alleges that the Foundation did not extend her employment, paid her a lower salary, did not consider her for non-entry level roles, and treated her differently than similarly situated employees because of her race. [26] ¶¶ 184-89.

The *Walton* court's reasoning behind allowing a plaintiff to plead multiple, bundled theories of discrimination in support of a Section 1981 claim is persuasive. The Court will allow Hutchens's ADEA and Section 1981 claims to proceed because Hutchens is permitted to plead her ADEA and Section 1981 claims in the alternative. *See United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584–85 (7th Cir. 2021) ("[A]lternative pleading is both permitted and routine."); *Douglas v. Alfasigma USA, Inc.*, No. 19-CV-2272, 2021 WL 2473790, at *14 (N.D. Ill. June 17, 2021) ("At the pleading stage, a plaintiff does not have to pick a horse. A plaintiff can offer different theories in the alternative." (citing Fed. R. Civ. P. 8(d)(2))); *DiBenedetto v. AT&T Servs., Inc.*, No. 1:21-CV-4527-MHC-RDC, 2022 WL 1682420, at *5 (N.D. Ga. May 19, 2022) ("[T]he liberal pleading standard under Federal Rule of Civil Procedure 8(d) allows a plaintiff to assert multiple inconsistent claims. *[E]ven if* [p]laintiff's [ADEA and Section 1981] claims are at odds, that is no reason to dismiss them before discovery." (emphasis in the original)). The Court will not dismiss

9

Hutchens's ADEA and Section 1981 claims and require her to replead them because to do so would likely prove extraordinarily difficult given that Hutchens is proceeding pro se. *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018) ("We therefore have long recognized that pro se litigants must be afforded leniency on procedural matters." (internal citation omitted)). Hutchens's repeated allegations that race discrimination *and* age discrimination independently caused her to experience adverse employment actions informs the Court that she intended to allege the theories in the alternative if she could not plead them together. The Court denies Defendants' motion to dismiss the ADEA (Count I) and Section 1981 (Count II) claims and allows those claims to proceed in the alternative.

### B. Hutchens exhausted her administrative remedies for her Title VII claims.

Before bringing a Title VII claim, a plaintiff must first exhaust her administrative remedies by filing charges with the EEOC and receiving a right to sue letter. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). After doing so, a plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). "[B]ecause most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir.1992)). At

10

minimum, the EEOC charge and the complaint must "describe the same conduct and implicate the same individuals." *Id.* at 501.

Defendants argue that Hutchens's Title VII claims for race discrimination and retaliation should be dismissed because Hutchens has failed to exhaust her administrative remedies. [33] at 7-8. Specifically, Defendants argue that Hutchens failed to include in her EEOC charges many of the details that she included in her Second Amended Complaint. [33] at 7-8. However, that Hutchens included more information in her Second Amended Complaint than she did in her EEOC charges and OFCCP complaint does not mean that she failed to exhaust her administrative remedies. *See Fairley v. McDonald's Corp.*, No. 20-CV-02273, 2021 WL 3054804, at *10 (N.D. Ill. July 20, 2021). "A federal complaint may include facts stemming from allegations in the charge that were not included in the charge and the [c]ourt may consider allegations relating to individuals not named in the charge for purposes of evaluating claims brought against parties who *were* named in the charge." *Id.* (emphasis in the original) (internal citations omitted).

Hutchens's EEOC charges identified the following instances of race discrimination and retaliation that are at the core of her Title VII claims against the Foundation: 1) despite applying for eight other positions that aligned more with her education and work experience, the Foundation only offered Hutchens an entry-level position, 2) the Foundation did not extend her employment contract but extended the contracts of similarly situated, underperforming employees, and 3) the Foundation, IDPH, and SHIELD stopped giving Hutchens work assignments and refused to allow

11

her to attend federally funded training in retaliation for her engaging in two protected activities—participating in the *Hutchens v. Chicago Board of Education* litigation and filing an internal complaint of discrimination. [26-1] at 16. Defendants do not dispute that Hutchens's OFCCP complaint can also be considered alongside her EEOC charges when determining whether Hutchens exhausted her administrative remedies. [37] at 5-6. In her OFCCP complaint, Hutchens stated that the Foundation did not extend her employment contract in retaliation for her participation in the *Hutchens v. Chicago Board of Education* litigation, indicated various ways she was treated differently than similarly situated employees, and named some of the similarly situated employees. [26-1] at 5-6. Hutchens provided more than enough information to exhaust her administrative remedies for her Title VII claims. The Court denies Defendants' motion to dismiss Hutchens's Title VII Race Discrimination claim (Count III). Next, the Court will address Defendants' additional argument for dismissing the Title VII Retaliation claim.

## C. Hutchens's allegations in support of her Title VII Retaliation claim are sufficient at this stage.

Pleading a retaliation claim under Title VII requires the plaintiff to "allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). The "inference of causation weakens as the time between the protected expression and the adverse action increases, and then additional proof of a causal nexus is necessary." *Carlson v. CSX Transp., Inc.*, 758

F.3d 819, 828 (7th Cir. 2014) (quoting *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 616 (7th Cir. 2001)).

Defendants argue that Hutchens failed to allege a causal nexus between the *Hutchens v. Board of Chicago* lawsuit and the Foundation not extending her employment contract because the lawsuit occurred thirteen years before the Foundation decided not to extend her contract, [37] at 6-7, and Hutchens's allegations suggest that the Foundation hired her with knowledge of the lawsuit, [33] at 8-9. In addition, Defendants state that "[t]he courts have concluded that one year between filing an alleged 'adverse action' is 'too distant for the inference of retaliation to stretch,' let alone thirteen years" and cite a string of motion for summary judgment cases. [37] at 6-7.

Hutchens does not simply allege that she engaged in a protected activity and thirteen years later experienced an adverse action. She alleges that the Foundation hired her without knowing about the *Hutchens v. Chicago Board of Education* lawsuit, someone at the Foundation looked her up and discovered the lawsuit, and, because of the Foundation and SHIELD's partnership with the Chicago Board of Education, the Foundation decided not to extend her employment contract while extending almost every other School Liaison's employment contract. [26] ¶¶ 151-52, 168-69, 171-74, 204-05, 207. Her allegations are adequate at this stage to state a retaliation claim under Title VII.[2] The Court denies Defendants' motion to dismiss the Title VII Retaliation claim (Count IV).

---

[2] Defendants also argue that Hutchens failed to allege that she was retaliated against for her internal complaint. [33] at 9. The Court agrees with Defendants that Hutchens being

13

### D. All of Hutchens's common law claims are either insufficiently pled or preempted by the Illinois Human Rights Act.

The Illinois Human Rights Act provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8–111(D). The IHRA preempts state law claims that are, in essence, claims that seek redress for civil rights violations within the meaning of the IHRA. *Geise v. Phoenix Co. of Chi., Inc.*, 159 Ill.2d 507, 516 (1994). The court must determine "whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517 (1997). "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation . . . the IHRA does not preempt a state law claim seeking recovery for it." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) (citing *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000))

Defendants argue that Hutchens's state law claims—intentional interference with contractual relations (Count V), tortious interference with prospective economic advantage (Count VI), civil conspiracy (Count VII), intentional infliction of emotional distress (Count VIII), and a violation of IWA (Count IX)—are preempted by

---

denied the opportunity to attend a training or being given fewer work assignments does not constitute adverse employment actions for purposes of Title VII. However, the Title VII Retaliation claim is allowed to proceed as to the Defendants' failure to extend Hutchens's contract.

the IHRA and therefore should be dismissed under Rule 12(b)(1) because each of those claims are premised on her allegations of age and race discrimination, and are thus inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the IHRA itself. [33] at 9-11. Hutchens argues that her state law claims are not preempted because she brought her race discrimination and retaliation claims under both Title VII and Section 1981, and Section 1981 is not among the enumerated acts defined as civil rights violations in the IHRA (775 Ill. Comp. Stat 5/1-103(D)). [35] at 13-14. The Court was unable to find support for Hutchens's argument in the cases that she cited or in the cases the Court found in its own search.[3]

The Court agrees that Counts V-IX are pre-empted by the IHRA. Counts V-IX rely on the same allegations of civil rights violations that support Counts I-IV. The proper inquiry is whether Hutchens can prove the elements of her state law claims independent of legal duties furnished by the IHRA, not whether the facts that support Hutchens's state law claims could also have supported a discrimination claim. *Naeem*, 444 F.3d at 604. Here, Hutchens's state law claims cannot be established without relying on duties imposed by the IHRA. For instance, the facts in Hutchens's Second Amended Complaint, without reliance on the duties imposed by the IHRA, don't rise to the level of extreme and outrageous conduct necessary to support an intentional

---

[3] The two cases that Hutchens cited in her response—*Blount v. Stroud,* 232 Ill.2d 302 (2009) and *Hernandez v. Partners Warehouse Supplier Servs.*, LLC, 890 F. Supp. 2d 951 (N.D. Ill. 2012)—state that the IHRA did not destroy state courts' jurisdiction to hear *Section 1981* claims because a violation of Section 1981 was not among the enumerated acts defined as "civil rights violations" in the IHRA.

infliction of emotional distress claim. *See Aleman v. McDonald's Corp.*, No. 20-CV-6925, 2021 WL 3418857, at *7 (N.D. Ill. Aug. 5, 2021) (quoting *Naeem*, 444 F.3d at 605-06 (observing that courts hesitate to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action)). The Court accordingly grants Defendants' motion to dismiss Counts V-IX.

Hutchens's allegations in support of her IWA claim are closest to establishing a state law claim without relying on duties imposed by the IHRA. *See Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009) ("[P]laintiff here established a basis for imposing liability on defendants independent of the [IHRA], i.e., without reference to the legal duties created by the [IHRA]."). Hutchens alleges that she "specifically reported in [her OFCCP] Charge that she had not worked for several weeks, but she still was being paid her full salary." [26] ¶ 253. As a result, Hutchens appears to suggest that she was retaliated against for disclosing information about the Foundation's improper pay practices. This Court agrees with Defendants' argument that Hutchens fails to state a claim under the IWA. [33] at 13-14. The allegations involving retaliation in the Second Amended Complaint only focus on retaliation related to civil

rights violations not retaliation for improper pay practices. [33] at 13-14. For these additional reasons, the Court dismisses the IWA claim (Count IX).[4]

### III. Hutchens's request to amend her complaint is denied.

In her response to Defendants' motion to dismiss, Hutchens asks the Court to grant her leave to amend her Second Amended Complaint to cure deficiencies. [35] at 15. Most relevant, Hutchens states that, if allowed to replead, she will bring the state law claims "without resorting to the statutory rights and obligations under the IHRA and incorporating said claims by reference to the preceding civil rights violations." [35] at 15. The Court denies Hutchens's request because this would be her third time amending her complaint and, based on her thorough allegations in her forty-six page Second Amended Complaint, it is unlikely that she would succeed at avoiding preemption even if she is given another opportunity to plead the state law claims.

### IV. Conclusion

For the stated reasons, the Court GRANTS in part Defendants' motion to dismiss [32]. Counts V-IX are dismissed with prejudice. The Court DENIES Defendants' motion to dismiss with respect to Counts I-IV.

---

[4] The Court does not address Defendants' additional arguments for why Hutchens's state law claims should be dismissed because those claims are dismissed on other grounds. [33] at 11-14.

E N T E R:

Dated: March 4, 2025

MARY M. ROWLAND
United States District Judge